JASPER E. JONES, Judge.
Plaintiff, Danny LeGrand, appeals a judgment rejecting his demands for damages against defendant, State of Louisiana through the Department of Highways, and its successor, the Department of Transportation and Development. We affirm.
Plaintiff was injured about 9:00 p. m. on June 12, 1977 while riding on the back of a Kawasaki 1000 motorcycle operated by Louis H. Padgett, III. They were returning from a day of skiing and swimming on Ninock Lake. They were traveling north on U. S. Highway 71 when Padgett lost control of the motorcycle, ran onto the east shoulder, and down a ditch located on the east side of the highway, and finally stopped after colliding with broken pieces of concrete resting against a culvert located in the ditch. Plaintiff contends that Pad-gett lost control of the motorcycle when he struck a bump or buckle located in the northbound lane of the highway. Both young men were seriously injured in the accident. Plaintiff alleges that the state was negligent in failing to repair the bump located in the highway which was dangerous to the traveling public.
The trial court found there was a bump in the general area where the motorcycle left the paved surface of the road. The trial court found Padgett did not strike the bump because he left the highway south of the place where the bump was located. The trial court further found that the bump in the road was not a dangerous defect. The court held that plaintiff did not prove by a preponderance of the evidence that his injuries were the result of any negligence on the part of defendant.
*959 Appellant assigns as error the following (1) the trial court erred in applying an unreasonably onerous burden of proof, (2) the trial court placed weight upon opinion testimony of one not qualified to render opinion, (3) the trial court erred in failing to applying strict liability to the facts presented.
The defendant is required to maintain the highways in a reasonably safe condition so that careful and ordinarily prudent travelers may not be exposed to danger. Defendant is not required to maintain the highways in a perfect condition and is not responsible for defects which are not in the nature of traps or from which danger cannot be reasonably anticipated. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975); U. S. F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780 (La.1976).
There is a long line of jurisprudence that holds that a public body is only responsible for a defect of which it had actual or constructive knowledge and had sufficient opportunity to remedy or at least to alert and warn motorists of its presence and failed to do so. Constructive knowledge was imputed where actual knowledge could have been obtained by regular inspection. See Barr v. St. through La. Dept. of Highways, 355 So.2d 52 (La.App. 2d Cir. 1978); Pickens; U. S. F. & G. Co., supra. However, in the U. S. F. & G. Co. supra, case the court alluded to the possible application of “strict liability” in cases of this kind:
“Our finding of negligence and liability under Civil Code article 2315 makes it unnecessary for us to consider the applicability of Louisiana Civil Code article 2317 as applied in our decision in Loescher v. Parr, 324 So.2d 441 (La.1975).” Id. at 786.
The very recent supreme court decision of Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (1980), has eliminated the requirement of knowledge of the defect in the highway as a condition precedent to liability. This decision is based upon the provision of LSA-C.C. art. 2317.[1] The court there said at page 740:
“Proof of notice of the defect is indeed required when a plaintiff contends that a public body was negligent, either by virtue of specific conduct of its employees which created the dangerous situation (which is itself construed as notice), or by virtue of its failure to correct a dangerous condition caused by others. But, as we have demonstrated, negligence is only one of the footings on which the codal structure of tort liability rests. Where delictual responsibility is based not on negligence but on legal fault, under article 2317, a public body’s knowledge of the existence of the danger is irrelevant. Liability is a consequence of the fact of ownership and custody in itself, not of the breach of a duty.”
The public body was here held liable for a defect in a catch basin cover though it was not established that its employees created the defect or had any knowledge of its existence nor any opportunity to correct it. While this case recognized liability without negligence it still requires a vice or defect which creates an unreasonable risk of injury and requires that the injury be the result of the defect. The court stated:
“Because the responsibility for preventing the unreasonable risk of injury to others is unconditional, the injured party seeking damages under article 2317 need not prove that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect-that is, that it occasioned an unreasonable risk of injury to another-and that his injury was caused by the defect. Loescher v. Parr, supra, [324 So.2d 441] at 446-447; Verlander, Article 2317 Liability; An Analy *960 sis of Louisiana Jurisprudence Since Loescher v. Parr, 25 Loyola L.Rev. 263 (1979).” Id. at p. 739.
The evidence established there was a bump across U. S. Hwy. 71 approximately 300 ft. south of the point where the motorcycle came to rest in the ditch on the east side of the highway. State Trooper Piere-lee who had the primary responsibility for investigating the accident arrived shortly after it occurred. He testified that he followed the track of the motorcycle along the bottom of the ditch and up the shoulder of the road to a point within 1 foot of the lane provided for northbound traffic and that he stepped off the distance from the place where the motorcycle left the road to where it came to rest to be 390 ft. He testified that the bump or raised place in the highway was located a distance which he later estimated to be 90 ft. north of the place where the motorcycle left the paved portion of the road. He did not measure the distance between the place where the motorcycle left the northbound lane to the location of the bump because the bump had no relevance to the facts surrounding the accident. Sgt. Don Smith, who was Pierelee’s supervisor, assisted him in “working the wreck.” Smith at trial remembered seeing the track of the motorcycle up the ditch and participated in following it to the point where the track was within about 1 ft. of the paved surface of the road. While Smith did not see the bump and remembered very few other facts surrounding the investigation, he clearly corroborated Officer Pierelee on the existence of the track of the motorcycle in the ditch and up to and across the shoulder of the road, and corroborated Pierelee’s location of where the motorcycle left the road.
Plaintiff contends the testimony of these two officers establishing the point where the motorcycle left the paved portion of the road was inadmissible because it was opinion evidence not given by an expert. The contention of plaintiff in this regard is without merit because it does not take an expert to follow a track from the location of the vehicle that made the track to its terminus near the edge of the paved surface of the road and to conclude based upon this factual observation that the vehicle left the road at this location.
This court stated in State v. Clark, 340 So.2d 1302 (La.1976), at p. 1305:
“While it is well settled that a lay witness may not give opinion testimony, it is equally well settled that on subjects which any person of experience may make a natural inference from facts observed, a lay witness may testify as to such inferences, provided he also states the facts observed.”
The only evidence in the record by which plaintiff attempts to establish that the existence of the buckle in the road caused Padgett to lose control of the motorcycle is his own testimony and that of Padgett that they struck something. Neither of them saw what they struck. On the night of the accident they were unable to give any circumstances to Officer Pierelee. On the day following the accident the officer interrogated them both in their hospital rooms and neither of them at that time related to the officer that they had struck a bump in the road, nor could they remember any circumstances surrounding the accident. They both testified at trial that Padgett lost control of the motorcycle when he struck a bump. Though the bump had been removed, probably in July following the accident in June, the evidence of its location was clearly present and the distance from the bump to the site of the culvert where Padgett’s motorcycle came to rest was established as 300 ft. by testimony of several witnesses who testified at trial. Officer Pierelee’s testimony that he stepped the distance off from the location of the motorcycle to the place where it left the pavement to be 390 ft. and that the bump was some distance north of this point is corroborated by the fact that the location of the bump was only 300 ft. south of the location of the motorcycle in the ditch. This circumstance fully supports the testimony of Officer Pierelee that the bump was so far north of the place where the motorcycle left the highway that he found the existence of the *961 bump in the road totally irrelevant to the circumstances surrounding the accident.
Plaintiffs contention that the trial judge placed upon it an unreasonable burden of proof was related to the following statement contained in the trial judge’s reasons for judgment:
“He could just as well have left the road in the curve and ‘hit’ the bottom of the shallow ditch, or a driveway across the shallow ditch, or an animal or turtle. The evidence simply does not prove that they struck a bump in the road.”
Plaintiff contends that the trial judge was requiring him to negate all other possible causes of Padgett’s losing control of the motorcycle other than striking the bump and that this was an unreasonable burden of proof. Our view of the trial judge’s comment was that he was making it abundantly clear that plaintiff did not establish by a preponderance of evidence that Pad-gett lost control of the motorcycle when he struck a bump in the road. The court at two places in its reasons for judgment makes it clear that it was requiring plaintiff to establish his case by a preponderance of the evidence:
“... the court remains of the opinion that the plaintiffs have not shown by a preponderance of the evidence that their injuries were a result of any negligence on the part of the State of Louisiana.
!f« SjC !{e Sfc * ifc
In the opinion of the Court, plaintiffs have not proved by a preponderance of the evidence that the State is guilty of any negligence contributing to the injuries suffered by these young men, . . .”
The testimony of Officer Pierelee and Sgt. Smith is substantial evidence to support the trial judge’s finding of fact that plaintiff failed to establish by a preponderance of the evidence that Padgett lost control and left the road when he struck a bump in the highway. When the trial judge made this finding which was supported by the evidence and which we do not find to be clearly wrong, he was required to have gone no further to conclude that plaintiff failed to establish that defendant was responsible for his damages. However, the trial judge made the additional finding of fact that plaintiff failed to establish that the bump in the road was a dangerous defect.
Plaintiff’s witness, Elston, who lived in the vicinity where the bump in the road was located testified that the bump was 8 or 9 inches wide and several inches high. Officer Pierelee testified that the bump was 18 inches wide and 6 inches high with a gradual ramp-like effect. Two state employees, one of whom was the Assistant Maintenance Engineer, and the other who was in direct charge of maintenance of Bossier Parish highways, testified they traversed the area where the accident occurred weekly and sometimes more often. They stated that there were no bumps in the area that were dangerous to vehicular traffic. They acknowledged the existence of “nuisance bumps.” They defined “nuisance bumps” as one that was 1 to 2 inches high, but which created no hazard to traffic. Neither of them, nor their Supervisor, the District Maintenance Engineer, had every received any complaint of the existence of any dangerous bumps in the area. Officer Pierelee made no report to them of any dangerous bumps following his investigation of the accident. Though plaintiff’s witness, Elston, testified that the bump was of such size that it bounced his cattle truck and that it had been there for some six or seven years, we find no manifest error in the trial judge’s factual finding that the bump was not dangerous. The trial judge’s factual determination was based upon positive testimony of the two State Highway supervisory maintenance employees who had responsibility for the area of the highway where the accident occurred. The trial judge had an opportunity to see and hear the witnesses testify, and his evaluation of their credibility and his factual finding based thereon is accepted by us as is mandated by Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Plaintiff contends that the trial judge should have applied the rule of strict liabili *962 ty as established by Loescher v. Parr, supra, and which was found in Jones, supra, to be applicable to the liability of the defendant for damages sustained in accidents caused due to vices or defects in the highway. An application of the doctrine of strict liability to this case does not change its result because that doctrine requires that the dangerous defect be established and that the damages be caused from the defect. Here the plaintiff failed to prove that the accident and his damages resulting therefrom flowed from, a dangerous defect in the highway, and under these circumstances, the judgment of the trial court remains correct.
Judgment is AFFIRMED at plaintiff’s cost.

. LSA-C.C. art. 2317: We are responsible not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.