424 So.2d 324 (1982)
Roy L. PAYNE
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Elliott WATSON and Mrs. Virgie McDonald Watson
v.
TRAVELERS INDEMNITY COMPANY, et al.
Nos. 14822, 14826.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
Rehearing Denied January 14, 1983.
*325 Hobart Pardue, Springfield, and Phillip Hagger, New Orleans, for plaintiffs Glen Murphy, E.L. Thornhill, Clarence Everett and Roy Payne.
Paul Dué, Baton Rouge, for plaintiffs Elliot Watson, et al.
William J. Doran, Baton Rouge, for defendants Louisiana Dept. of Transp. and Development et al.
Before SHORTESS, SAVOIE and ELLIS, JJ.
SAVOIE, Judge.
Five cases were consolidated for trial (Numbers 14,822; 14,823; 14,824; 14,825; and 14,826). The Louisiana Department of Transportation and Development (Department) is a common defendant and appellant in each case, which stem from four different automobile accidents, three of which involved single vehicles. The same approximate location is involved also: Louisiana Highway 43 in Livingston Parish, approximately 3.4 miles north of its intersection with U.S. Highway 190. In all four accidents, a southbound motorist left the roadway after failing to negotiate a curve. The curve was described as 400 feet long, turning through a delta angle of 20° to 30°, resulting in an estimated 5.9° curve. The road is 20 feet wide with 3 to 4 foot shoulders *326 on each side. On the west side, the ditch is 12 to 14 feet from the road. On the east side, the ditch is flatter and its bank is about 22 feet off the road. The curve is not super-elevated and has an adverse crown[1] at its end.
We dispose of these cases with separate opinions in order to promote a proper understanding of the factual situation surrounding each.
Defendant-appellant asserts the trial court's award of damages in tort to plaintiffs-appellees, Mr. and Mrs. Payne, is in error. We affirm the holding of the trial court.
On April 16, 1978, Mrs. Payne and her eight-month old child, traveling south on La. Hwy. 43, were involved in a one-car accident. She failed to negotiate a curve after the right tires of her vehicle strayed onto the shoulder of the road. After slowing down, she attempted to regain the paved roadway but "lunged" across the proper lane of traffic into the path of Watson's on-coming car, colliding with it. Mrs. Payne testified that after she slowed her vehicle to negotiate the curve (her child standing on the seat beside her), she remembered nothing until waking up in the hospital.
Louisiana State Police Trooper G. Van Dawson testified that he vaguely (emphasis added) remembered Mrs. Payne recalling she had reached for her child. However, his testimony does not reflect at what time in this accident sequence this "reaching" occurred. Trooper Dawson also testified there was a six to eight inch drop-off from the paved roadway to the shoulder running down the road "aways".
The sole eye-witness, David Wagner, testified Mrs. Payne appeared (emphasis added) to reach for her child after (emphasis added) the vehicle had "dropped" off the paved roadway. He stated she applied her brakes after "dropping" off the paved roadway and it appeared as though the vehicle might roll over. Further, he stated she appeared to regain control of her vehicle until she attempted to re-enter the paved roadway. Testimony indicates Mrs. Payne attempted to re-enter the roadway while in this six to eight inch drop-off.
Testimony also clearly indicates the Department had failed to erect any warning signs concerning the low shoulder despite a long history of accidents in this location.
The trial court found the road's shoulder at the curve to be defective and the sole cause of the accident. Finding no evidence of any substandard conduct, the trial court awarded her damages. The trial court also awarded Mr. Payne damages for the loss of his vehicle and medical expenses incurred by Mrs. Payne.
Appellant lists the following specifications of error:
"I. The trial court erred in its finding that there was present on the roadway at the time of these accidents, a condition which was patently and obviously dangerous to a driver exercising ordinary care and reasonable prudence.
"II. The trial court erred in failing to find the drivers of the various vehicles guilty of negligent conduct which was the sole cause of these accidents, or in the alternative, from finding these drivers to be guilty of contributory negligence, or in the further alternative, for failure to find that the recovery of these plaintiffs was barred from "victim fault" or fault of a third party which would constitute an intervening cause of these accidents and would bar recovery under any doctrine of strict liability.
"III. The trial court erred in failing to reduce any award to the Watsons by its virile share based upon the settlement of the Watsons with *327 Travelers Insurance Company and United States Fidelity & Guaranty Company, or in the alternative, erred in failing to grant credit to the Department of Transportation for amounts paid as a result of these settlements.
"IV. The trial court erred in awarding to plaintiffs an excessive amount of damages."
At trial, appellees claimed damages under both strict liability and negligence. We find liability would attach under either theory of recovery.
Louisiana Civil Code Art. 2317 states:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
One may recover on the basis of strict liability under L.S.A.-C.C. 2317 by showing (1) that the thing which caused the damage was in the care or custody of defendant, (2) that it had a vice or defect, that is, some condition which occasioned an unreasonable risk of injury, and (3) that the injury was caused by the defect. Jones v. City of Baton Rouge, etc., 388 So.2d 737 (La.1980).
"Highway" is defined as a public way for vehicular, mounted and pedestrian traffic, including the entire area dedicated thereto and the bridges, culverts, structures, appurtenances, and features necessary to or associated with its purposes. L.S.A.-R.S. 48:1(11). "Shoulder" is defined as that portion of the highway contiguous with the roadway for accommodation of stopped vehicles, emergency use, and lateral support of base and surface. L.S.A.-R.S. 48:1(21). La. Hwy. 43 is defined as a state highway. L.S.A.-R.S. 48:191. As such, the road and shoulder of La. Hwy. 43 are in the care and custody of the Louisiana Department of Transportation and Development (Department). Foggan v. Louisiana Department of Transportation and Development, 402 So.2d 154 (La.App. 1st Cir.1981).
The Department is under a duty to maintain safe highways and shoulders, that duty extending to protect the people who may foreseeably be placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). Appellees are within the ambit of the Department's duty to maintain safe shoulders.
Appellees have proven by a preponderance of the evidence a six to eight inch drop-off existed in this curve between the roadway and the shoulder. Testimony of Hubert Stilley, Kenneth Johnston, and Donald Ray Morrison supports a finding the Department had actual knowledge of the defect at the time in question. Stilley, who lived only one mile east of the accident site, travels La. Hwy. 43 several times a day. After observing an accident in the summer or fall of 1976 at this spot, he notified the Department about the low shoulders which, he felt, warranted repair. Kenneth Johnston, the Department's maintenance engineer, was in charge of an asphalt overlay project for La. Hwy. 43, which was completed March 3, 1976. He testified the asphalt applied to the highway raised the road's elevation by one and one-half inches. Donald Ray Morrison, with the Department's planning section, gathered data relative to the accident site. Morrison testified that from 1974 to 1978, there were eleven collisions at this location, most of which were one-car accidents. Additionally, no warning signs had been erected. The highway and its adjoining shoulder were a vice or defect that occasioned an unreasonable risk of injury.
Using Sinitiere's, supra, "but for" test to determine cause-in-fact, we agree with the trial court's conclusion that this accident would not have occurred had the shoulder been substantially even with the paved roadway. The trial court's findings of fact will not be disturbed on appeal unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). There is also a substantial relationship between the failure to correct the highway defect and the accident, the risk encountered by appellees.
*328 We find the trial court correctly found the Department liable under Art. 2317, as (1) the highway was in the care and custody of the Department, (2) the shoulder of the highway posed such a danger to motorists that it was a vice or defect in the highway, and (3) the defective shoulder was a substantial cause of appellees' injuries.
We now consider whether the Department could also be held liable on the grounds of negligence.
All rules of conduct are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that can befall him, merely because it shows that the violation of the rule played a part in producing the injury.
The Department's general duties toward motorists on the highway are set forth in Sinitiere v. Lavergne, supra, wherein our Supreme Court held as follows:
"It has been repeatedly stated that the Department is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of the hazardous condition and fails to take corrective action within a reasonable time." Sinitiere, supra, p. 824-825. (Emphasis added).
Consequently, it is necessary that we carefully examine the facts in the present case to determine whether a legal duty is imposed upon the Department which protects against the particular risk involved. LeBlanc v. State of Louisiana and the Louisiana Department of Highways, 419 So.2d 853 (La.1982).
Appellees have proven that the highway at this location had a long history of accidents, dating back to 1974. They also proved that by March, 1976, an asphalt overlay of 1½ inches had been applied to the highway. Since that date, there had been no work on the shoulders to bring them flush with the roadway. Additionally, Hubert Stilley, a local resident, saw an accident in the general vicinity in the fall or summer of 1976. Upon investigation, he determined the shoulder to be a good bit lower than the roadway. He called the Highway Department office in Hammond to advise them of the dangerous condition which he felt warranted repair. These facts show by a clear preponderance of the evidence that the Department had actual notice of the highway's defective condition, but failed to take corrective action within a reasonable time. Thus, liability under negligence may attach.
It is well settled in Louisiana that for a plaintiff to recover in negligence, he must prove: (1) that the act complained of was a cause-in-fact of the accident, (2) that the defendant had a duty, either statutory or non-statutory, to protect this plaintiff against the cause of harm complained of, (3) that the defendant breached this duty to protect this plaintiff, and (4) that the plaintiff was harmed by this breach of the duty owed. Mathews v. Elder International, 400 So.2d 251 (La.App. 4th Cir.1981); Kane v. Braquet, 368 So.2d 1176 (La.App. 3rd Cir. 1979), writ denied, 369 So.2d 1366 (La.1979); also see generally Pierrotti v. Associated Indemnity Corp., 399 So.2d 679 (La.App. 1st Cir.1981).
The Department has a duty to see that the highways are reasonably safe for persons exercising ordinary care and reasonable prudence. Sinitiere, supra; Smith v. State, Department of Transportation and Development, 412 So.2d 685 (La.App. 2d Cir.1982); Sibley v. Menard, 398 So.2d 590 (La.App. 1st Cir.1980), writ denied, 400 So.2d 211 (La.1981). Included within these duties of the Department is the maintenance of the shoulders of the highways in a reasonably safe condition. Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979).
The scope of the Department's duty extends to protecting this motorist from this type of accident. Appellees are within the ambit of the Department's duty.
Appellees have shown by a preponderance of the evidence that the Department *329 breached its duty by not leveling the shoulder[2]; that in 1976, Hubert Stilley informed the Department the curve required maintenance of the low shoulders; that this curve had a history of accidents; and that no warning signs were present prior to the curve to warn motorists of the deep dropoff. These facts substantiate appellees' claim that the Department breached its duty to maintain a safe roadway.
It is uncontested that appellees sustained the injuries claimed as a result of the accident. Although Mr. Payne did not allege any property damage in his original petition, the pleadings were enlarged sufficiently, without objection, to develop such loss. Therefore, the trial court found appellees had proven a prima facie case of negligence against the Department. We agree.
Appellant contends alternatively, that Mrs. Payne's contributory negligence or fault should bar recovery. Contributory negligence is not a defense in strict liability. Loescher v. Parr, 324 So.2d 441 (La.1975); Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370 (La.App. 1st Cir.1981), writ denied, 401 So.2d 988 (La.1981). A contrary view in dicta wherein the court with two Justices concurring and three Justices concurring in results, stated only that contributory negligence "should" bar recovery in strict liability based on a case by case basis. Dorry v. Lafleur, 399 So.2d 559 (La.1981). Contributory negligence as applied to the claim of strict liability in this instance is clearly inapplicable based upon established Louisiana jurisprudence and the factual distinctions between the instant case and Dorry. See Loescher, supra; Canty, supra.
Victim fault sufficient to preclude recovery under L.S.A.-C.C. 2317 must be conduct of such a nature as to constitute a cause-in-fact of the accident. Ferguson v. State Farm Fire and Casualty Company, 398 So.2d 72 (La.App. 4th Cir.1981). The trial court correctly determined the actions of Mrs. Payne fell short of conduct constituting a cause-in-fact of the accident, sufficient to defeat recovery.[3]
This court must give great weight to the factual conclusions reached by the trial court, Canter v. Koehring Co., 283 So.2d 716 (La. 1973), and may not substitute its own evaluations and inferences, for the reasonable evaluations and inferences of the trier of fact, unless those conclusions are clearly erroneous. Abadie v. Morales, 391 So.2d 974 (La.App. 4th Cir.1980); Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.1980), writ denied, 392 So.2d 690 (La.1980). The trial court found Mrs. Payne had not evidenced any substandard conduct sufficient to constitute contributory negligence. Absent any clear error as to the trial court's findings of fact, it shall be upheld. Arceneaux, supra.
The Department asserts the Watsons' award exceeded the great discretion of the trial court. A review of the medical evidence reveals that both received painful, severe, and permanent injuries. The trial court did not abuse its great discretion in its award of damages. Reck v. Stevens, 373 So.2d 498 (La.1979).
The trial court did not err in failing to reduce any award to the Watsons by its virile share because of the Watsons' settlement with Payne. The Department was aware of the release of Payne prior to trial. *330 In its third party petition, the Department raised the issue of Payne's negligence and this issue was fully litigated. It was determined at trial that Payne was not negligent and, therefore, not a joint tort-feasor. Thus the settlement between Watson and Payne did not reduce the Watsons' claim against the Department. Wall v. American Employers Insurance Company, et al., 386 So.2d 79 (La.1980).
Roy Payne was awarded $7,175.40 for loss of his vehicle and medical expenses incurred on behalf of his wife. Mrs. Payne was awarded $50,000.00 by the trial court for the injuries, residual adverse emotional developments, and physical pain she sustained as a result of the accident.
The Department argues that the trial court erred in awarding appellees excessive damages, but has failed in its brief or in argument to specify any reason to justify a reduction in the award. Our examination of the record indicates it does not abuse the great discretion afforded the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979).
For the reasons set forth above, judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
SHORTESS, Judge, dissenting.
I respectfully dissent in Payne v. La. DOTD, Number 14,822, but agree with the majority's treatment of Watson v. La. DOTD, Number 14,826.
The majority correctly concludes that the defect in the shoulder played a substantial causal role in this accident. However, Mrs. Payne's substandard conduct set in motion the unfortunate events which were to follow, as she was guilty of negligence in leaving the highway and thereafter, in failing to maintain control of her vehicle. Mrs. Payne's conduct was a substantial cause of the accident, and her fault should bar her recovery.
The record reveals the following facts: Carol Payne stated that she was traveling down La. Highway 43 in a 1978 Ford pickup truck; that her eight-month old son was standing on the seat next to her; and that the child was not in a baby seat or under any other restraint. Mrs. Payne stated that she had traveled La. 43 very frequently prior to the accident; that she was familiar with the highway and its curve; and that the location of the accident was near her home. In fact, she stated that she had slowed down just prior to the accident, because she was scared of the curves. The last thing Mrs. Payne remembered was slowing down for the curve. She was unable to recall her actions in leaving the highway or in maneuvering the shoulder.
G. Van Dawson, the State Trooper who investigated the accident, stated that there were no defects on the paved roadway itself, though he did find the shoulder defective; that the weather was clear; and that Mrs. Payne told him that her baby slid across the seat, and she was "fooling with him" just as the accident began to unfold.
A motorist has a duty of reasonable care which includes the duty to keep his vehicle under control. Russo v. Guillory, 322 So.2d 233 (La.App. 4th Cir.1975), writ denied, 325 So.2d 608 (La.1976). A motorist also has a duty to maintain a proper lookout for hazards which by the use of ordinary care and observation he should be able to see in time to avoid running into them. Southern Farm Bureau Casualty Ins. Co. v. Gay, 276 So.2d 893 (La.App. 1st Cir.1973). Therefore, I would find that Mrs. Payne's actions in leaving the highway constituted negligence.
Even assuming said conduct was "inadvertence" under the holding of Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979), Mrs. Payne's actions in maneuvering her vehicle, once on the shoulder, were also substandard. The Louisiana Supreme Court recently discussed the duty the Department of Highways owes to straying motorists in LeBlanc v. State of Louisiana, Dept. of Highways, 419 So.2d 853 (1982). The court stated:
"Of course, the duty imposed on the Department is tempered by common sense. As this court held in Sinitiere, it does not protect a motorist against a shoulder defect *331 or obstruction of which he has knowledge and a reasonable opportunity to avoid."
The only independent witness, David Wagner, testified that Mrs. Payne initially maintained control of her vehicle, when part of it left the highway; that she appeared to be able to negotiate the curve; that she went down a little ways and then brought it back, then her car lunged, went across the roadway and hit the Watson vehicle. The majority admits that testimony indicates Mrs. Payne attempted to re-enter the highway while in this six- to eightinch drop-off. After straying from the highway, Mrs. Payne knew she was in a defective spot on the shoulder. She attempted to slow down and had a reasonable opportunity to continue slowing down or even to come to a complete stop if necessary. These facts are very similar to those in Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980) and compel a similar ruling. Here, as in Sinitiere, plaintiff successfully slowed down while traveling the shoulder, yet instead of continuing this type of action, attempted to jump back on the highway from a rut in the shoulder. The facts are inapposite to those in LeBlanc, supra. Mrs. LeBlanc had never driven on the road before and there were no signs to alert her to the drop-off. This factual difference between the two cases is critical. Here, Mrs. Payne lived in close proximity to the site of the accident, had traveled the road on numerous occasions, and even slowed down at the curves because she was scared of them. Thus, Mrs. Payne's fault should preclude her recovery.
Accordingly, I dissent.
NOTES
[1] An adverse crown is present when the road slopes in the same direction as the centrifugal force. The centrifugal force, therefore, assists rather than opposes the force. In this case, the force created by the vehicle going through this curve would tend to throw the vehicle outward, and the adverse crown would tend to increase the outward force.
[2] It is to be noted that the shoulder's drop-off was accentuated by the Department's asphalt overlaying operation in 1975-76.
[3] LeBlanc, supra, is factually almost identical with the instant case. In both cases, there was a severe "drop-off" from the road to the shoulder. In LeBlanc, the plaintiff inadvertently strayed onto the shoulder, whereas here, inadvertent straying and an adverse crown to the road at the curve tended to propel Mrs. Payne's vehicle onto the shoulder. There was testimony in LeBlanc indicating that the driver was unfamiliar with the highway defect. Here, no testimony was adduced that the driver was familiar with the highway defect. The driver in LeBlanc instinctively sought to re-enter the road, whereas Mrs. Payne sought instinctively to protect her minor child. Evidence suggested that the driver in LeBlanc may have lost control while on the shoulder, while an eye-witness testified Mrs. Payne's vehicle almost turned over onto its right side when it went on the shoulder. The particular facts of this case warrant recovery more so than those in LeBlanc.